IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 08-058-SLR |
| ) | |
| WILLIAM HARRIS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

On April 10, 2008, defendant William Harris was indicted by a grand jury for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (D.I. 10) The charges emanate from evidence obtained pursuant to an investigation conducted by members of the Wilmington Police Department ("WPD") on March 26, 2008. Defendant moves for suppression of evidence, arguing the evidence was obtained as the result of a warrantless search and seizure, and that his statements to law enforcement officers should be suppressed because he did not make a knowing, intelligent or voluntary waiver of his Fifth Amendment *Miranda* rights. (D.I. 13) An evidentiary hearing was conducted on September 19, 2008.[1] (D.I. 24) The matter is fully briefed. (D.I. 21, 22, 23) The court has jurisdiction pursuant to 18 U.S.C. § 3231.

---

[1] Testifying on behalf of plaintiff were WPD officer Thomas Esterling ("Esterling") and WPD detective Steven Parrott ("Parrott"). WPD officer Sean Connor ("Connor") testified on behalf of defendant.


## II. FINDINGS OF FACTS

Pursuant to Federal Rules of Criminal Procedure 12(d), the following constitutes the court's essential findings of fact.

1. On March 26, 2008 at approximately 5:30 p.m., WPD officers Esterling[2] and Connor were on uniformed patrol in a marked police vehicle in the area of 900 North Pine Street, Wilmington, Delaware.[3] (D.I. 24 at 4) The officers were following-up on numerous community complaints regarding open drug sales, alcohol consumption and loitering at a vacant building and lot located at 901 North Pine Street ("the lot"). (Id. at 4, 8)

2. As the officers drove up to the lot, Esterling observed two men seated in lawn chairs and another man[4] standing nearby. (Id. at 5, 16) Scattered on the ground, around the men, were numerous beer cans. (Id. at 5) The officers pulled their vehicle along the curb to further investigate for open container law violations and for trespassing. (Id. at 6, 15) As Esterling exited the vehicle and walked toward the men, he noticed defendant turn and walk away toward the opening of an alley that runs through the back of the lot. (Id. at 6, 17)

---

[2]Esterling has been a WPD police officer for over ten years, currently holding the rank of senior corporal. (Id. at 3) He is assigned to the community policing unit, and responsible for handling community based complaints that fall outside normal patrol functions. Esterling was a passenger in the vehicle driven by his partner, Connor. (Id. at 37)

[3]Characterized by Esterling as a high crime area. (Id. at 8)

[4]Identified as defendant. (Id. at 7)

3. Defendant stopped at the beginning of the alley and knelt down. (*Id.* at 6) With defendant's back facing Esterling,[5] defendant turned over a block ("the block"), set something down on the ground and then turned over the block back on top of the object. (*Id.* at 6, 20) Defendant then stood up, turned and walked back toward Esterling. (*Id.* at 7)

4. Esterling concluded defendant's behavior was suspicious. For officer safety, Esterling ordered defendant to show his hands and sit in a lawn chair as he investigated further. (*Id.* at 7) In response to Esterling's requests for name and identification, defendant said he did not have any identification, and said his name was "Andre Fountain," a fictitious name. (*Id.* at 8) Defendant was unable to provide a date of birth, age or the spelling of his last name. (*Id.* at 8-9) Based on defendant's responses, Esterling advised defendant that he would be detained until his identity could be confirmed. Defendant was placed in handcuffs and moved to the backseat of the patrol vehicle. (*Id.* at 9, 23) Esterling testified that defendant was not under arrest, but was detained consistent with standard police procedure. (*Id.* at 23)

5. Esterling walked over to the area where he had seen defendant kneeling. (*Id.* at 10) He saw the silver part of a handgun sticking out from under the block. Esterling turned the block over and retrieved a loaded handgun with a black handle. He secured the handgun in his patrol vehicle and entered the vehicle to speak with defendant. (*Id.* at 24)

---

[5]Since it was still light outside and defendant was about 10 feet away, Esterling observed defendant's movements without difficulty, interruption or obstruction. (*Id.* at 7, 14, 18)

6. After informing defendant that he wanted to ask a few questions, Esterling advised defendant of his *Miranda* rights.[6] (*Id.* at 10 -11) Defendant said he understood his rights and wanted to speak with Esterling. (*Id.* at 12) After Esterling questioned defendant about the gun, defendant denied any knowledge of a gun and stopped talking. Esterling stopped the questioning and left the vehicle to assist Connor[7] with the other two men.

7. Thereafter, defendant was transported to Wilmington Police Central where he provided his correct name. (*Id.* at 13) At about 8:00 p.m., Parrott[8] interviewed defendant, advising him of the reason he was detained. (*Id.* at 30, 32) Parrott asked defendant if he had been provided *Miranda* warnings, to which defendant affirmatively responded. (*Id.* at 30) Parrott asked defendant whether he understood that he did not have to talk to him, to which defendant affirmatively responded. (*Id.* at 30-31) Defendant told Parrott he had the gun for protection and answered no additional questions. (*Id.* at 31) The interview was not recorded nor did defendant sign any statements. Defendant was not handcuffed during the interview.

## III. STANDARD OF REVIEW

### A. Standing

---

[6]Esterling read the *Miranda* warnings from a card he carries, the same from which he read to defendant. (*Id.* at 11-12)

[7]During Esterling's interactions with defendant, Connor was dealing with and speaking to the other men. (*Id.* at 5, 22, 37)

[8]Parrott has been a WPD officer for over 10 years. (*Id.* at 29) Parrott is also a special deputy United States marshal and a task force officer for Operation Fed Up.

4

1. When a search and seizure is conducted without a warrant and the defendant establishes a legitimate expectation of privacy, the government bears the burden of proving that the search and seizure was reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). The government must demonstrate, by a preponderance of the evidence, that the actions of its agents are consistent with constitutional protections. *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974). Before reaching the merits of defendant's motion to suppress, however, the court must determine whether defendant had a legitimate expectation of privacy in the gun seized in order to challenge the search and seizure.

2. The United States Supreme Court has held that "a defendant can urge the suppression of evidence obtained in violation of the Fourth Amendment only if that defendant demonstrates that **his** Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Padilla*, 508 U.S. 77, 81 (1993) (emphasis in original); *Brown v. United States*, 411 U.S. 223, 230 (1973); *United States v. Hebron,* 243 F. Supp.2d 90, 92 (D. Del. 2003). To demonstrate standing, the defendant challenging the legality of the search bears the initial burden of establishing that he had a legitimate expectation of privacy in the property searched and the item seized and that he "manifest[ed] a subjective expectation of privacy" in that property. *United States v. Baker*, 221 F.3d 438, 441 (3d Cir. 2000); *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990).

3. The court finds that defendant lacks standing to assert a Fourth Amendment challenge because he did not present any evidence demonstrating that he had a

reasonable expectation of privacy in the block located on the vacant lot. The uncontested record is devoid of any information regarding defendant's relationship to the block or the lot. Although plaintiff argues that defendant concealed and carried the gun as he walked to the alleyway, the record is unclear. Specifically, Esterling testified that he observed defendant from behind and saw him set something down before covering it with the block. There was no testimony or evidence, however, establishing that defendant had the gun before walking to the alleyway or that he carried and concealed the gun to the same location.

4. "It has long been settled that objects falling in the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be introduced into evidence." *Harris v. United States,* 390 U.S. 234, 236 (1968). If any item is in plain view, mere observation of that item by a police officer does not constitute an invasion of privacy protected by the Fourth Amendment. *Horton v. California*, 496 U.S. 128, 133 (1990).

**B. The Statements**

1. The Fifth Amendment of the United States Constitution guarantees that, in a criminal proceeding, no person will be forced to be a witness against himself. To this end, the United States Supreme Court created the *Miranda* warnings for law enforcement to follow prior to custodial interrogation of a suspect. *Miranda v. Arizona*, 384 U.S. 436 (1966). Specifically, before any questioning, the suspect must be informed that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney,

6

either retained or appointed." *Id.* at 445. These "warnings are constitutionally required to combat the compelling pressures inherent in custodial police interrogation and to permit a full opportunity to exercise the privilege against self-incrimination" guaranteed by the Fifth Amendment. *Dickerson v. United States*, 530 U.S. 428, 440 (2000). Statements obtained in violation of Miranda precepts, even though the statements may be voluntary, are inadmissible to prove guilt at trial. *See Michigan v. Mosely*, 423 U.S. 96, 100 (1975); *Miranda,* at 458-59.

2. It is the government's burden to prove, by a preponderance of the evidence, that a defendant was properly advised of his *Miranda* rights; that the defendant voluntarily, knowingly, and intelligently waived said rights; and that the ensuing statement was voluntarily made. *United States v. Durham,* 741 F.Supp. 498, 504 (D. Del.1990). *See Colorado v. Connelly*, 479 U.S. 157, 168-69 (1986). Two factors must be considered to determine whether a waiver was voluntary, knowing and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986).

3. The totality of the circumstances surrounding the questioning must be examined to determine the sufficiency of *Miranda* warnings and any waiver of rights. *See United States v. Velasquez*, 885 F.2d 1076, 1086 (3d Cir. 1989); *North Carolina v. Butler*, 441 U.S. 369 (1979). In analyzing the totality of the circumstances, a court

"must look at the facts of the particular case, including the background, experiences, and conduct of the suspect." *Velasquez*, 885 F.2d at 1086. Potential circumstances affecting the voluntariness of the statements include: 1) evidence of police coercion; 2) the length and location of the interrogation; 3) the defendant's maturity, physical condition, mental health and level of education; 4) whether *Miranda* warnings were given; and 5) whether an attorney was present for the interview. *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994); *Connelly*, 479 U.S. at 164 (a confession is involuntary if is the product of overreaching police conduct). The court is charged with reviewing the "credibility of the witnesses and the weight to be given the evidence, together with the inferences, deductions and conclusions to be drawn from the evidence." *United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993); *Government of the Virgin Islands v. Gereau*, 502 F.2d 914, 921 (3d Cir. 1974).

4. A valid *Miranda* waiver may be made orally or may be implied based on the defendant's conduct.[9] See *Butler*, 441 U.S. 369, 373 (1979).[10] Specifically the Supreme Court has stated that, while "an express written or oral statement of a waiver is strong proof as to the validity of a waiver, it is not necessary or sufficient to establish a waiver." *Id.* The Third Circuit has consistently followed this precedent. See *United States v. Cruz*, 910 F.2d 1072, 1080 (3d Cir. 1990); *United States v. Velasquez*, 626

---

[9]"[I]n at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler,* 441 U.S. 369, 373 (1979).

[10]In *Butler*, the Supreme Court found that a suspect had effectively waived his rights when, after being verbally advised of his rights and having read them, the suspect indicated he would speak to police and answer questions despite refusing to sign a waiver of *Miranda* rights form.

F.2d 314 (3d Cir. 1980)[11]. Verbal statements by a suspect acknowledging an understanding of his *Miranda* rights followed by the suspect's answering questions can qualify as an implicit waiver of protections, thus satisfying the constitutional safeguards established in *Miranda*.

5. Considering the totality of the circumstances at bar, the court finds that Esterling properly administered *Miranda* warnings to defendant and that defendant made a voluntary, knowing, and intelligent waiver of his *Miranda* rights. In that regard, the court credits the testimony of Esterling and Parrott. Esterling's recitation of defendant's *Miranda* protections was thorough and defendant responded affirmatively when asked if he understood his rights. Later, during questioning by Parrott, defendant stated that he understood his *Miranda* rights and agreed to be interviewed. Both interviews were brief and when defendant stopped answering questions, the interviews stopped. Nothing in the record indicates that defendant suffered from any mental illness or was under the influence of drugs or alcohol at the time of the interrogation.

## IV. CONCLUSION

At Wilmington this 22nd day of December, 2008,

IT IS ORDERED that:

---

[11] In *Velasquez*, the Third Circuit found that a suspect had implicitly waived her rights where, after being read her *Miranda* rights, she stated that she understood her rights and proceeded to give statements to authorities. No waiver of *Miranda* rights form was signed and the suspect was never asked if she was waiving her *Miranda* rights.

1. Defendant's motion to suppress statements is denied (D.I. 13).

2. A telephonic status conference is scheduled for **Wednesday, January 7, 2009** at **9:00 a.m.**, with the court initiating said call.

3. The time between this order and the teleconference shall be excluded under the Speedy Trial Act in the interest of justice. 18 U.S.C. § 3161(h)(8)(A).

United States District Judge